106 F.3d 426
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
MINNESOTA MINING & MANUFACTURING COMPANY, Plaintiff-Appellant,
v.
INTERNATIONAL BIOPHYSICS CORPORATION, Defendant-Appellee.
 96-1371
 United States Court of Appeals, Federal Circuit.
 Jan. 15, 1997.
 
 Before MICHEL, and CLEVENGER, Circuit Judge, and COWEN, Senior Circuit Judge,
 CLEVENGER, Circuit Judge.
 
 
 1
 Minnesota Mining & Manufacturing (3M) appeals from an interlocutory order of the United States District Court for the Central District of California denying 3M's motion for a preliminary injunction to enjoin International Biophysics Corporation (IBC) from infringing U.S. Patent No. 4,786,474 (the '474 patent). The district court denied 3M's motion primarily on the ground that 3M failed to demonstrate likelihood of success on the infringement issue. Because the court erred on the infringement issue as a matter of law by failing properly to consider equivalents under § 112, para. 6 (§ 112(6)) and under the doctrine of equivalents for the sole limitation at issue, we vacate the order and remand.
 
 
 2
 * The patent in suit discloses a medical device for detecting various blood conditions during open-heart surgery. The device includes the following main components as shown in Fig. 1 of the '474 patent:
 
 
 3
 The diagram above shows a combination of a sensor unit 21 (top component) and a flow-through housing 13 (bottom component) for analyzing a patient's blood during the surgery. The sensor unit and the flow-through housing snap together, but are separated by semi-permeable membranes. The membranes are mounted on a membrane support unit 15 (middle component), which is bonded to the flow-through housing 13. During surgery, blood passes through the flow-through housing, allowing various constituents from the blood to diffuse through the membranes and into the sensors (not shown in the figure), which measure various characteristics of the blood (oxygen and carbon dioxide content and so forth).
 
 
 4
 Claim 1, the only claim in issue on this appeal, reads as follows (with emphasis added):
 
 
 5
 1. A membrane support apparatus with sensors comprising:
 
 
 6
 a housing having a flow passage for flow of liquid therethrough and means defining an opening leading to said flow passage;
 
 
 7
 a tensionable membrane permeable to a constituent of interest and impermeable to another constituent;
 
 
 8
 means for mounting the membrane on the housing with the membrane extending over the opening;
 
 
 9
 a sensor support, a section of the sensor support being extendible through the opening;
 
 
 10
 an optical sensor for sensing a characteristic of a first component of a liquid;
 
 
 11
 said optical sensor being carried by said section of the sensor support;
 
 
 12
 means for transmitting an optical signal form [sic, from] the optical sensor; and
 
 
 13
 means for mounting the sensor support on the housing with said section of the sensor support extending through the opening and with at least one of said section of the sensor support and said sensor engaging and tensioning the membrane.
 
 
 14
 The means limitation highlighted above is the only limitation in issue on this appeal. It relates to the manner in which the membranes are attached to the membrane support unit. This limitation is described more fully in conjunction with Fig. 3 of the patent:
 
 
 15
 As shown above, the means limitation in issue--means for mounting the membrane on the housing with the membrane extending over the opening--corresponds to a rectangular retaining bar 93 that the two membranes wrap around at the joint of the two membranes, and the so-wrapped bar is inserted in a groove 87 on the membrane support 15. This retaining bar structure may also be supplemented by adhesive. See '474 patent, col. 2, lines 52-53. Throughout the specification, it is emphasized that a strong attachment between the membranes and the membrane support is required for the invention, and that this strong attachment is provided by the retaining bar structure. See, e.g., '474 patent, col. 3, lines 25-29; col. 6, lines 17-21.
 
 
 16
 The comparable feature in IBC's accused flow-though housing is illustrated below:
 
 
 17
 In contrast to the retaining bar and the groove of the '474 patent, the IBC device mounts the membranes to the support 56 by adhesive and reinforces it by a figure 8 exterior frame 34. 3M also accuses IBC's single-membrane product, which is substantially similar to the two-membrane product depicted above, except the single-membrane product employs a rectangular exterior frame instead of the figure 8 frame used in the two-membrane embodiment.
 
 II
 
 18
 The denial of a preliminary injunction is within the discretion of the district court and is reviewed on appeal under the abuse of discretion standard. Novo Nordisk of N. America, Inc. v. Genentech, Inc., 77 F.3d 1364, 1367, 37 USPQ2d 1773, 1775 (Fed.Cir.1996). An abuse of discretion may be established when the district court exercised its discretion based upon an error of law or clearly erroneous factual findings. Id.
 
 
 19
 As the moving party, 3M bears the burden of establishing its right to a preliminary injunction in light of four factors: (1) a reasonable likelihood of success on the merits, with respect to the patent's validity, enforceability, and infringement; (2) irreparable harm if the injunctive relief is not granted; (3) the balance of hardships favoring 3M; and (4) the impact of an injunction on the public interest. Id.; Reebok Int'l Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1555, 31 USPQ2d 1781, 1783 (Fed.Cir.1994).
 
 
 20
 We have jurisdiction to review pursuant to 28 U.S.C. § 1292(c)(1) (1994).
 
 III
 
 21
 The district court construed the means limitation in issue as "a means for mounting the membranes in which the membranes overlap each other, are wrapped partially around a retaining bar, and are wedged into a groove." The court noted:
 
 
 22
 The IBC device, on the other hand, does not appear to have a retaining bar, nor are the membranes wrapped around anything. Rather, the membranes are tensioned by a frame around their edges, to which they are bound by an adhesive material.
 
 
 23
 Thus, the district court found that the accused product lacks the retaining bar structure disclosed in the '474 patent specification. The district court then addressed the issues of equivalence under § 112(6) and under the doctrine of equivalents, but found insufficient showing of a likelihood of infringement.
 
 
 24
 Having thus found little likelihood of infringement based on the "means for mounting the membrane" limitation, the court found it unnecessary to reach the issue of patent validity or the infringement issue regarding a second "means" limitation in dispute--means for mounting the sensor support on the housing. The court then summarily noted that 3M's arguments on irreparable harm, balance of hardships and public interest were largely dependent on a strong showing of infringement and thus must also fail.
 
 
 25
 3M raises two principal arguments on this appeal. First, 3M asserts that the district court erred in its identification of the corresponding structure from the specification for the means limitation in issue. According to 3M, the '474 patent discloses the use of adhesive only (i.e., without using the retaining bar and the groove) in its two-membrane embodiment, as well as in its single-membrane embodiment. 3M argues that when the correct structure (the adhesive-only embodiment) is compared with the accused structure, literal infringement is demonstrated. 3M's second argument is that the district court erred in its failure to conduct the proper equivalency analyses under § 112(6) and under the doctrine of equivalents.
 
 
 26
 For the reasons set forth below, we reject 3M's first argument, but agree with its second argument.
 
 IV
 
 27
 3M's first argument consists of two parts: (1) that the '474 patent specification discloses a two-membrane embodiment that uses adhesive only for attaching the membranes to the membrane support; and (2) that the '474 patent specification discloses a single-membrane embodiment which clearly uses adhesive only. We examine each of these arguments in turn.
 
 
 28
 * As the district court correctly determined and the parties do not contest, the "means for mounting the membrane" limitation is interpreted in accordance with 35 U.S.C. § 112, para. 6 (1994):
 
 
 29
 An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.
 
 
 30
 Thus, a first step in construing a § 112(6) limitation is to identify the structure disclosed in the specification that corresponds to the means limitation in issue. The district court determined the limitation to correspond to the retaining bar structure. See '474 patent, Fig. 3 and col. 5, lines 34-68.
 
 
 31
 3M argues that the district court erred in determining that the retaining bar structure is the only corresponding structure disclosed in the specification for the means limitation in issue. 3M advances several arguments in support of this contention.
 
 
 32
 First, 3M points to the following passage in the specification to argue that the specification disclosed embodiments in addition to the retaining bar structure:
 
 
 33
 The tensioning of the membranes requires a strong attachment between the membranes and the membrane support and, for this reason, is particularly adapted for use with the membrane mounting technique of this invention. However, the use of the sensors to tension the membranes can be used with other forms of attachment for the membranes to the membrane support.
 
 
 34
 '474 patent, col. 3, lines 25-31 (emphasis added). 3M combines this passage with other portions of the specification where use of adhesive in conjunction with the retaining bar is discussed to assert that the specification discloses embodiments that employ adhesive only to attach the membranes to the membrane support. The argument is that the adhesive-only embodiment corresponds literally to the accused IBC devices which use an adhesive to attach the membranes to the membrane support.
 
 
 35
 We are not convinced that 3M disclosed adhesive-only embodiments vis-a-vis the passage quoted above. The passage above only operates as a reservation that other "means for attaching" may be used, but does not provide any affirmative teaching as to what those other "means for attaching" may be. If anything, the above passage indicates that adhesive alone may be insufficient for the purposes of the invention because the invention requires a very strong attachment of the membranes to the membrane support. See also '474 patent, col. 2, lines 24-29; col. 5, lines 49-52. To construe the means limitation as proposed by 3M based on the all-encompassing language above would render § 112(6) meaningless--a reservation would operate to broaden a means limitation to encompass any and all means for performing a function. See Valmont Indus., Inc. v. Reinke Mfg. Co., 983 F.2d 1039, 1042, 25 USPQ2d 1451, 1454 (Fed.Cir.1993) (The patentee must describe in the patent specification some structure that performs the specified function.); Laitram Corp. v. Rexnord, Inc., 939 F.2d 1533, 1536, 19 USPQ2d 1367, 1370 (Fed.Cir.1991) (A means clause does not cover every means for performing the specified function.).
 
 
 36
 The additional passages 3M points to as disclosing an adhesive-only embodiment show using the adhesive together with the retaining bar structure. See, e.g., '474 patent, col. 5, line 53--col. 6, line 4. Because these references in the specification do not specify use of an adhesive alone as a means for mounting the membrane, they cannot support 3M's argument.
 
 
 37
 3M next argues that the means limitation in issue should be construed broadly as to include only the adhesive but not the retaining bar structure because there were two distinct inventions disclosed in the specification, and that for the purposes of the claimed invention in suit, the retaining bar structure is unnecessary. 3M explains that of the two inventions, one invention (which is not in suit) is directed to a specific way of attaching the membranes to the membrane support (i.e., the retaining bar structure), and the other invention (which is in suit) is directed at the overall flow-through housing device for which the particular manner of attaching the membranes to the membrane support does not matter. It is true that two separate patents issued out of the same specification--the '474 patent in suit and U.S. Patent No. 4,640,820 (the '820 patent), which is not in suit. The '474 patent application was a divisional of the '820 patent application, and thus, the two share an identical specification. As 3M contends, the claims in the '820 patent are more specifically directed to the detailed features of the retaining bar structure. For example, representative is claim 1 of the '820 patent:
 
 1. A membrane support apparatus comprising:
 
 38
 a membrane support having first and second recesses;
 
 
 39
 first and second membranes extending over the first and second recesses, respectively, said first and second membranes being permeable to at least a component of a liquid;
 
 
 40
 means for mounting the first and second membranes on the membrane support with the membranes extending over the first and second recesses, respectively;
 
 
 41
 said mounting means including a groove in the membrane support between the recesses, edge portions of said membranes extending into said groove;
 
 
 42
 said mounting means including means for retaining the edge portions in said groove; and
 
 
 43
 said edge portions of said first membrane extending into said groove on a side thereof adjacent the first recess, and said second membrane extending over said retaining means on a side thereof facing outwardly of said groove and then extending into said groove to thereby form a smooth transition with said first membrane.
 
 
 44
 Thus, the claims of the '820 patent recite the details of the means for mounting the membrane--the retaining bar and the groove. The claim in suit of the '474 patent, on the other hand, employs a "short-hand" means limitation, rather than reciting the detailed structure disclosed in the specification. In emphasizing the differences in the level of particularity between the claims of the '820 patent (reciting the details of the membrane mounting feature) and the claim of the '474 patent in suit (with the short-hand means limitation), 3M in effect invokes a type of claim differentiation. In sum, 3M argues that the means limitation in suit should be construed broadly (i.e., not to be limited to the retaining bar structure) because the claims of the related '820 patent recite the retaining bar structure in detail. However, as we explained in Laitram, 939 F.2d at 1538, 19 USPQ2d at 1371, the judicially created doctrine of claim differentiation cannot serve to broaden the scope of a means limitation, which must be construed to cover only the corresponding structure disclosed in the specification and equivalents thereof pursuant to the statutory mandate of § 112(6). This is particularly so, where, as here, the patentee emphasized in the patent specification the particular details of the underlying structure corresponding to the means limitation in issue. See, e.g., '474 patent, col. 6, lines 17-21. Accordingly, we reject 3M's argument that the means limitation in issue somehow is not limited by the corresponding structure in the specification.
 
 B
 
 45
 In further support of its argument that the specification disclosed adhesive-only embodiments, 3M next points to a reference in the specification to a single-membrane embodiment. For a single-membrane embodiment, 3M asserts, there is no reason to use the retaining bar structure, and thus one of ordinary skill in the art would have known to use adhesive only. The portion of the specification relied on by 3M reads as follows (with emphasis added):
 
 
 46
 Although the attachment features of this invention are applicable to the attachment of similar or dissimilar membranes to a membrane support, they are particularly adapted for the attachment of dissimilar membranes. Dissimilar membranes are membranes having at least one meaningful difference, such as differences in materials, thicknesses and components which will pass through the membrane. Similarly, the attachment features of this invention are applicable to the attachment of only a single membrane to the membrane support.
 
 
 47
 '474 patent, col. 2, lines 3-12.
 
 
 48
 During the oral argument, 3M's counsel asserted that with a single-membrane embodiment, a person of ordinary skill in the art would never think of using the retaining bar structure and would obviously use adhesive only. Contrary to 3M's assertion, however, we believe the passage itself ("the attachment features of this invention ") makes clear that the retaining bar structure must be used even in a single membrane embodiment. 3M's reliance on what a person of ordinary skill in the art would use in conjunction with the single-membrane embodiment is also undermined by claim 17 of the '820 patent. As we stated earlier, the '474 patent in suit is a divisional of the '820 patent and shares an identical specification. Claim 17 of the '820 patent, which is directed to a single-membrane embodiment, specifies use of the retaining bar structure in conjunction with the claimed single-membrane embodiment.
 
 V
 
 49
 3M's second principal argument states that the district court erred in its failure properly to consider equivalents under § 112(6), and in misapplication of the doctrine of equivalents. 3M points in particular to the following statements from the district court opinion (emphasis added):
 
 
 50
 [T]he IBC device would still infringe if it fell within the scope of equivalency of the relevant means claim. The Court finds, however, that 3M has not persuasively defined a scope of equivalency of its '474 specification's "means for mounting the membrane" that would encompass the accused device, but not simultaneously encompass prior art. For the same reasons, the Court finds that 3M has not made a showing of infringement of claim 1 under the doctrine of equivalents. See Wilson Sporting Goods v. David Geoffrey & Assoc., 904 F.2d 677, 683 (Fed.Cir.1990) (no infringement under the doctrine of equivalents "if the asserted scope of equivalency of what is literally claimed would encompass prior art").
 
 
 51
 These statements misapprehend the law of equivalence under § 112(6) and under the doctrine of equivalents. That a component in the accused product was already in the prior art does not limit the range of equivalents under § 112(6) or under the doctrine of equivalents. The district court's statements to the contrary were erroneous as a matter of law and skewed its entire analysis.
 
 
 52
 We first address the doctrine of equivalents issue. The district court misstated the holding of the Wilson Sporting Goods case. That case does not stand for the proposition that under the doctrine of equivalents, a claim limitation cannot cover a feature that was already in the prior art. It simply states the truism that a claim cannot be infringed under the doctrine of equivalents by a prior art device. See Wilson Sporting Goods Co. v. David Geoffrey & Assoc., 904 F.2d 677, 683, 14 USPQ2d 1942, 1948 (Fed.Cir.), cert. denied, 498 U.S. 992 (1990). This court explained the distinction between a claim limitation and a claim as a whole in the context of equivalency analysis in Intel Corp. v. U.S. Int'l Trade Comm'n, 946 F.2d 821, 842, 20 USPQ2d 1161, 1179 (Fed.Cir.1991) (emphasis in original):
 
 
 53
 Although under the doctrine of equivalents prior art restricts the extent to which patent protection can be equitably extended beyond the claims to cover an accused device, the policies underlying that concept are not served by restricting claim limitations in the same manner. Claim limitations may, and often do, read on the prior art, particularly in combination patents.
 
 
 54
 Similarly, a feature that is readily available from the prior art may constitute an equivalent under § 112(6). See Data Line Corp. v. Micro Techs., Inc., 813 F.2d 1196, 1202, 1 USPQ2d 2052, 2055 (Fed.Cir.1987) (known interchangeability of the structure disclosed in the specification and the structure in the accused device is a factor favoring a finding of equivalence under § 112(6)). Thus, the district court erred as a matter of law in categorically excluding the prior art from the possible range of equivalents under § 112(6) and under the doctrine of equivalents.
 
 VI
 
 55
 In sum, the district court properly identified the structure in the specification that corresponds to the means limitation in issue and correctly found that the accused product lacks the same structure disclosed in the specification for the means limitation in issue. However, the court failed properly to consider literal infringement by equivalents under § 112(6) and infringement under the doctrine of equivalents. We therefore vacate the order denying the requested injunction and remand to the district court for further consideration of the motion consistent with this opinion.