The **LAITRAM CORPORATION** and **Intralox, Inc., Plaintiffs–Appellees,**

v.

**REXNORD, INC., Defendant–Appellant.**

**Nos. 90–1360, 90–1384.**

United States Court of Appeals, Federal Circuit.

July 5, 1991.

Rehearing Denied in No. 90–1360 Sept. 9, 1991.

**1534**

Paul J. Hayes of Weingarten, Schurgin, Gagnebin & Hayes, Boston, Mass., argued for plaintiffs-appellees. With him on the brief was Victor B. Lebovici.

Kenneth E. Payne of Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., argued for defendant-appellant. With him on the brief was Dirk D. Thomas.

Before NIES, Chief Judge, and RICH and CLEVENGER, Circuit Judges.

NIES, Chief Judge.

Rexnord, Inc., appeals the judgment of the United States District Court for the Eastern District of Wisconsin (Warren, J.) that claims 21 and 22 of U.S. Patent No. 4,051,949 ('949), assigned to Laitram Corp., were infringed by Rexnord. *Laitram Corp. v. Rexnord, Inc.,* 15 USPQ2d 1161 (E.D.Wis.1990). Laitram and Intralox [1] (hereinafter collectively referred to as "Laitram") brought suit charging, *inter alia,* that Rexnord's 4707 conveyor product infringed the '949 patent. Rexnord defended on the grounds that its accused product did not infringe any claims of the '949 patent and that, in any event, Laitram was barred by laches and equitable estoppel from collecting any damages and from enforcing the '949 patent against Rexnord. The district court, after determining that neither laches nor equitable estoppel applied against Laitram, ruled that Rexnord's 4707 conveyor product infringed claims 21 and 22 of the '949 patent.

Our jurisdiction over this appeal is provided by 28 U.S.C. § 1295(a)(1) (1988). Having reviewed the record and the legal arguments of the parties, we reverse the judgment of infringement.

## I

## BACKGROUND

The invention claimed in the '949 patent is directed to a conveyor belt which addresses the problem of tippage of containers being conveyed. This is the second litigation between Rexnord and Laitram concerning the '949 patent. In the first suit, the district court determined that the asserted claims of the '949 patent were not invalid, and that Rexnord's 4800 series conveyor products infringed. *Rexnord, Inc. v. Laitram Corp.,* 6 USPQ2d 1817 (E.D.Wis. 1988). The current round of litigation was triggered by Laitram's charge that another Rexnord conveyor product, model no. 4707, infringes claims 21 and 22 of the '949 patent. Rexnord's model no. 4707 was in production at the time of the prior suit but was not charged to be an infringement until late in those proceedings.[2] Laitram's delay and its conduct in that suit are the basis for Rexnord's defenses of laches and estoppel. However, we do not address those issues. The district court's finding of infringement is based on a legally erroneous claim interpretation urged by Laitram at trial and before this court. Under the correct interpretation of the claim, Laitram's infringement charge fails for lack of proof.

## II

## INFRINGEMENT

The claimed invention generally consists of a modular plastic conveyor belt of raised rib construction, which allows smooth

---

1. "Intralox is a wholly-owned subsidiary of Laitram and is the exclusive licensee of the patent in suit." 15 USPQ2d at 1162.

2. Indeed, after the preliminary injunction hearing, the trial court refused to allow Laitram to add the 4707 belt as an accused device in the 4800 series lawsuit, stating, as follows:

> [I]t appears that Laitram's position—both explicitly and implicitly—throughout pretrial proceedings has been that the Rexnord 4707 module does not infringe the patents in suit. *Rexnord,* 15 USPQ2d at 1165 (quoting from its earlier ruling on Rexnord's motion in limine).

transfer of containers to and from the head and tail ends of a conveyor via a transfer comb. The conveyor belt is composed of a plurality of plastic modules which are pivotally connected at their link ends.

■ To establish infringement, every limitation set forth in a patent claim must be found in an accused product or process exactly or by a substantial equivalent. *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1259, 9 USPQ2d 1962, 1967 (Fed.Cir.1989). The patentee bears the burden of proving infringement by a preponderance of the evidence. *Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1545, 3 USPQ2d 1412, 1417 (Fed.Cir.1987).

At issue herein is claim 21 of the '949 patent, the only independent claim charged to be infringed.[3] Rexnord asserts that the structure of its 4707 device does not meet subparagraphs numbered 1, 2, 4 and 7 of claim 21. (See note 3 supra.) We are persuaded that Laitram failed to prove that subparagraph 2 was satisfied either literally or by an equivalent. Since the failure to meet a single limitation is sufficient to negate infringement of the claim, we will limit our analysis accordingly.

## A

### Literal Infringement

■ Rexnord asserts that the district court legally erred in its interpretation of the following language of subparagraph 2 of claim 21:

[2] means for joining said pluralities [of link ends] to one another so that the axes of said holes of said first plurality are arranged coaxially, the axes of said holes of said second plurality are arranged coaxially and the axes of respective holes of both pluralities of link ends are substantially parallel; .... [Hereinafter subparagraph 2.]

Rexnord argues, as it did below, that this claim language must be interpreted in accordance with 35 U.S.C. § 112, paragraph 6 (1988) (hereinafter "section 112(6)") which states:

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

The district court, accepting Laitram's argument, held that section 112(6) was inapplicable to subparagraph 2, reasoning that "[t]he means plus function language of subparagraph 2 includes a recital of structure, thus, section 112(6) is inapplicable to the present case." *Rexnord*, 15 USPQ2d at 1170. Accordingly, the court did not compare the accused device to the structure disclosed in '949's specification,

**3.** 21. A linked belt adapted to move through a circular arc for use in conjunction with a conveyor comb having a plurality of spaced-apart parallel teeth, said belt comprising:

[1] a plurality of like modules, each of said modules including a first and second like pluralities of link ends of substantially identical width, each such end being formed to circumscribe a pivotal hole through said width;

[2] means for joining said pluralities to one another so that the axes of said holes of said first plurality are arranged coaxially, the axes of said holes of said second plurality are arranged coaxially and the axes of respective holes of both pluralities of link ends are substantially parallel;

[3] a plurality of spaced apart elongated upstanding vanes mounted on said modules so as to extend in a substantially parallel direction to one another in a direction trans-

versely to the axes of said holes of said both pluralities and protrude substantially perpendicularly from said module;

[4] said link ends being dimensioned and spaced apart by a distance slightly greater than said width;

[5] said link ends of each of said modules being releasably engaged between the link ends of an adjacent module except for individual link ends disposed at the extreme sides of said belt;

[6] means for pivotally connecting said modules at engaged link ends;

[7] said elongated vanes of each of said modules being arranged in staggered relation with respect to the vanes of adjacent modules, said vanes of each module being spaced from one another sufficiently to form a multiplicity of channels lying beneath the upper most surface of said belt when staggered, said channels being adapted to receive said teeth.

in order to determine whether the accused and claimed structure were the same or equivalent, as required under section 112(6).

The recitation of some structure in a means plus function element does not preclude the applicability of section 112(6). For example, in this case, the structural description in the joining means clause merely serves to further specify the function of that means. The recited structure tells only what the means-for-joining *does*, not what it *is* structurally.

■ Absent section 112(6), claim language which requires only a means for performing a function might be indefinite. *Jonsson v. Stanley Works*, 903 F.2d 812, 819, 14 USPQ2d 1863, 1869 (Fed.Cir.1990); *Data Line Corp. v. Micro Technologies, Inc.*, 813 F.2d 1196, 1201, 1 USPQ2d 2052, 2055 (Fed.Cir.1987). While the use of means-plus-function language in a claim is clearly permissible by reason of section 112(6), a means clause does not cover *every means* for performing the specified function. Rather,

> [Section 112(6)] means exactly what it says: To determine whether a claim limitation is met literally, where expressed as a means for performing a stated function, the court must compare the accused structure *with the disclosed structure*, and must find equivalent *structure* as well as *identity* of claimed *function* for that structure.

*Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934, 4 USPQ2d 1737, 1739 (Fed.Cir.1987) (emphasis in original) (citations omitted), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988).

■ Thus, section 112(6) "rules out the possibility that any and every means which performs the function specified in the claim *literally* satisfies that limitation. While encompassing equivalents of those means disclosed in the specification, the provision, nevertheless, acts as a restriction on the literal satisfaction of a claim limitation." *Id.* (emphasis in original). The district court, therefore, erred, as a matter of law,

by not interpreting subparagraph 2 of claim 21 in accordance with section 112(6) and in holding that this limitation was met merely because there was some means in the accused device that performed the stated function. The means-plus-function language must not only read on the accused device, but also, if the accused structure is different from that described in the patent, the patentee must prove, for literal infringement, that the means in the accused device is structurally equivalent to the means described in the specification. *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1580, 12 USPQ2d 1382, 1386–87 (Fed.Cir. 1989).

■ Looking to '949's specification, the means for joining a plurality of *link ends* is described as follows:

> Each of the link-like elements is formed of a pair of like link end sections 21 joined by at least one intermediate or connecting section 22 having a generally rectangular cross section with a greater depth (or height) than width. Thus all link-like elements have substantially identical lengths (i.e. the distance between the extremities of each pair of joined link ends). All of the link-like elements of a module are joined as a unit by at least one and preferably a pair of spaced cross-members 24 formed integrally with connecting sections 22 to form a rigid structure.

> \*     \*     \*     \*     \*     \*

> Cross members 24 function to maintain the link-like elements in parallel relation so that the surfaces of end sections 21 are kept parallel and pivot holes 26 aligned, thereby minimizing bending stresses across pivot pin 28.

Thus, the link ends are first connected by elongated bars to form link elements, and these link elements are connected by cross members. This combination of structure joins the *pluralities of link ends*. As illustrated in Fig. 2 of '949, the structure forms a grid, which Laitram refers to as an H–shape arrangement:

FIG. 2

CROSS MEMBERS

LINK ENDS

Laitram asserted and the district court found that the following structure met the means limitation of subparagraph 2:

REACH BARS

LINK ENDS

The above structure is an accused 4707 conveyor belt module without its top plate. The top plate normally overlies the top of the reach bars and is molded to or with such bars. Samples of the V-shaped mold-ed plastic structure shown above were submitted to the court by Laitram. This is the only structure which Laitram asserts satisfies subparagraph 2.[4]

4. Per Rexnord, Laitram is precluded from arguing that 4707's top plate is equivalent to '949's cross members, by reason of similar structure in the prior art over which Laitram distinguished its invention. Accordingly, Rexnord asserts that under section 112(6) as a matter of claim interpretation or under the doctrine of equivalents as a matter of prosecution history estoppel the 4707's top plate cannot furnish the cross members. We need not resolve these issues inasmuch as Laitram relies only on the V-shaped member as meeting the limitation under section 112(6) or the doctrine. Hence, there is here no issue of fact concerning the equiva-

There is no dispute that the V-shaped structure of the accused device is not the same means for joining a plurality of link ends which is set out in '949's specification. The 4707 device does not have structure joining link ends into link elements and structure joining these link elements by one or more cross members into a rigid grid.

Laitram argues that an interpretation of claim 21 which reads the structural limitation of a cross member into claim 21 is impermissible despite section 112(6), because claim 24 of the patent (a claim which depends from claim 21, but which is not in suit) specifically requires a cross member. Citing the plurality opinion in *SRI Int'l v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1121, 227 USPQ 577, 586–87 (Fed.Cir.1985) (in banc), Laitram explains that claim 21 cannot also require a cross member because to so hold would emasculate the doctrine of claim differentiation. Several fallacies are readily apparent in this argument.

First, the interpretation of the "means for joining" to include a cross member comes from the specification via section 112(6), not from claim 24. Thus, the prohibition against reading limitations from a dependent claim into the independent claim is not violated. Laitram's argument that claim 24 prevents claim 21 from being interpreted as statutorily mandated by section 112(6) must be rejected. As stated in *Autogiro Co. of America v. United States*, 181 Ct.Cl. 55, 384 F.2d 391, 404, 155 USPQ 697, 708 (1967):

> [T]he concept of claim differentiation ... states that claims should be *presumed* to cover different inventions. This means that an interpretation of a claim should be avoided if it would make the claim read like another one. Claim differentiation is a guide, not a rigid rule. If a claim will bear only one interpretation, similarity will have to be tolerated. [Emphasis added and footnotes omitted.]

lency of the H-shape structure in '949 and the V-shaped structure in combination with the top

Simply stated, the judicially developed guide to claim interpretation known as "claim differentiation" cannot override the statute. A means-plus-function limitation is not made open-ended by the presence of another claim specifically claiming the disclosed structure which underlies the means clause or an equivalent of that structure. If Laitram's argument were adopted, it would provide a convenient way of avoiding the express mandate of section 112(6). We hold that one cannot escape that mandate by merely adding a claim or claims specifically reciting such structure or structures.

In any event, claims 21 and 24 do not, as Laitram asserts, thereby have exactly the same scope and, thus, claim differentiation is maintained. Claim 21 remains broader than claim 24. *Literally*, claim 21 covers the structure described in the specification *and equivalents* thereof. *Pennwalt*, 833 F.2d at 934, 4 USPQ2d at 1739. Dependent claim 24 does not *literally* cover equivalents of cross members.

Laitram argues that, even if the district court misinterpreted the claim under section 112(6), the judgment of infringement should nonetheless be affirmed because the district court's error is harmless. The V-shaped and H-shaped structures, per Laitram, are the "same" because they perform the same function. As indicated however, even if true, different structures are not *ipso facto* equivalent merely because they perform the same function. To so hold would effectively eliminate the statutory restriction of section 112(6). *Id.*

Laitram attempts to make an admission of equivalency out of the testimony of Rexnord's expert who stated that the reach bars in the 4707 are "similar" to the elongated members connecting the link-ends in the patented invention and also cites the testimony of Rexnord's Chief Engineer that the link ends of the 4707 are connected by reach bars. Clearly, this evidence does not establish the structural equivalency of the 4707 reach bars to the structure consisting of elongated members plus one or

plate in the 4707 module.

more cross members which is described in the specification of the '949 patent.

The only other evidence Laitram points to is testimony of the inventor and others which explains that the link ends in both the invention and the 4707 belt were maintained in a parallel relationship so that a rod could be put through the link ends and the belts could run in a straight line. Again, that does not establish the necessary equivalency.

■ When a challenge is presented to the sufficiency of the evidence under a proper legal analysis, an appellate court may consider whether the appellee has properly identified the presence of a disputed factual issue by citation to evidence of record. *Boyle v. United Technologies Corp.,* 487 U.S. 500, 513–514, 108 S.Ct. 2510, 2518–19, 101 L.Ed.2d 442 (1988) ("If the evidence presented in the first trial would not suffice, as a matter of law, to support a jury verdict under the properly formulated defense, judgment could properly be entered for the respondent at once, without a new trial."). Laitram has not met the burden of identifying a genuine issue of fact on the issue of structural equivalency under section 112(6) that should be submitted to the trial court for determination.

### B.

### Doctrine of Equivalents

Under the doctrine of equivalents, an accused product which does not literally infringe a claim may infringe "if it performs substantially the same function in substantially the same way to obtain the same result." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950). To work "in substantially the same way," all the limitations of the claim must be satisfied at least equivalently. *Becton Dickinson and Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 798, 17 USPQ2d 1097, 1101 (Fed.Cir.1990). Thus, Laitram was required, *inter alia,* to prove that an equivalent was substituted in the accused device

for the required joining means element of the claim.

This inquiry of equivalency to the joining means under the doctrine may not be as limited as under section 112(6). *Pennwalt,* 833 F.2d at 934, 4 USPQ2d at 1739. However, at most, Laitram makes conclusory assertions of infringement under the doctrine and again asserts that the function of the joining means reads on the reach bars. On the basis of the evidence of record presented to us, we can find no basis for remand for a factual determination that the joining means was met equivalently for purposes of infringement under the doctrine.

### III

### OTHER ISSUES

Our conclusion with respect to subparagraph 2 is sufficient to negate infringement, and we therefore need not reach the issues raised concerning subparagraphs 1, 4, and 7 or laches and estoppel.

### IV

### CONCLUSION

As stated in *Panduit Corp. v. Dennison Mfg. Co.,* 810 F.2d 1561, 1565–66, 1 USPQ2d 1593, 1595 (Fed.Cir.), *cert. denied,* 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987), reversal rather than remand is appropriate when "[n]othing of record warrants a further exercise of the [trial court's] fact-finding function or indicates any possibility that the appealed judgment might be sustained by such exercise." Under the circumstances here, reversal is appropriate because there are no evidentiary conflicts requiring resolution on the issue of infringement. *See, e.g., Key Mfg. Group, Inc. v. Microdot, Inc.,* 925 F.2d 1444, 17 USPQ2d 1806 (Fed.Cir.1991); *Senmed, Inc. v. Richard–Allan Medical Indus., Inc.,* 888 F.2d 815, 12 USPQ2d 1508 (Fed.Cir.1989) (judgments of infringement reversed where evidence insufficient on proper claim interpretation).

For the foregoing reasons, we reverse the judgment of infringement.

V

COSTS

Costs to Rexnord.

REVERSED.