NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1319

KWIK PRODUCTS, INC.,

Plaintiff/Counterclaim Defendant-Appellant,

and

FERNANDO R. IACONA and IGNAZIO M. IACONA,

Counterclaim Defendants-Appellees,

v.

NATIONAL EXPRESS, INC., CMD PRODUCTS, GEORGE E. ALLISS, ALEX J. PHINN, JR., GRIFF AND ASSOCIATES, L.P., and TORVIAN, INC.,

Defendants/Counterclaimants-Appellees.

———————————

DECIDED: April 26, 2006

———————————

Before MICHEL, Chief Judge, MAYER and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

Kwik Products, Inc. ("Kwik") appeals from the judgment of the United States District Court for the Southern District of New York of noninfringement of U.S. Patent 5,896,666 in favor of National Express, Inc., CMD Products, George E. Alliss, Alex J. Phinn, Jr. and Griff and Associates, L.P., and Torvian, Inc (collectively "Torvian"). Kwik

Prod., Inc. v. Nat'l Express, Inc., No. 03-9291 (S.D.N.Y. March 29, 2006) ("Final Judgment"). Because the district court correctly construed the claim limitation "clamping means" and did not clearly err in finding no literal infringement of claim 1 and no infringement of claim 15 under the doctrine of equivalents, we affirm.

BACKGROUND

Vegetation trimmers are outdoor power tools used to cut grass, weeds, and other vegetation, and feature a replaceable head that spins a blade or string at speeds up to 10,000 rpm. Kwik Prod., Inc. v. Nat'l Express, Inc., 356 F. Supp. 2d 303, 305 (S.D.N.Y. 2005) ("Opinion"). The '666 patent, entitled "Head for String Trimmer," assigned to Kwik, is directed to a vegetation trimmer head that can be easily reloaded. Independent claim 1 discloses a combination of a cutting head and string for cutting and trimming vegetation comprising at least one generally straight length of string, a cutting head, and a clamping means for fixing the string to the head. '666 patent, col. 6, ll. 37-55. Claim 2, which depends from claim 1, adds the limitation that the clamping means include a pivotally mounted clamping member and a pressing wall aligned to cooperatively clamp the string. Id., col. 6, ll. 56-59. Independent claim 15, which also discloses a cutting head for a string trimmer, requires a clamping member that is pivotally mounted and urged by a spring in a clockwise direction around a pivot post against an opposing wall. Id., col. 8, ll. 18-44.

As illustrated in Figure 3, the clamping member (36), which is a cam in this embodiment, rotates on the pivoting post (38), pressing the string (14) against the pressing wall (32). The center of gravity of the cam is denoted by the letters "CG" and a

spring (40) biases the cam so that it will rotate in a certain direction. The spring has one end secured to the cam and the other end secured to a bracket in the side wall.



FIG. 3

Kwik began manufacturing the commercial embodiment of the '666 patent in 1998. Opinion, 356 F. Supp. 2d. at 308. In 2000, George Allis developed a competing vegetation trimmer head. Id. at 309. Allis's device used a spring-biased, slideable clamping member with a compression spring to hold straight lengths of trimmer string in place. Id. On June 24, 2003, the U.S. Patent and Trademark Office ("PTO") issued U.S. Patent 6,581,292, entitled "Vegetation Trimmer Apparatus," covering Allis's invention. Id. at 309-10. Torvian later marketed its commercial embodiment of that invention as the "Grass Gator Load n' Cut." Id. at 310.

On November 21, 2003, Kwik filed suit against Torvian in the United States District Court for the Southern District of New York, alleging infringement of claims 1, 2, and 15 of the '666 patent. Kwik filed an amended complaint on April 28, 2004. In its May 28, 2004, answer to the amended complaint, Torvian asserted a single counterclaim for a declaratory judgment of invalidity and unenforceability of claims 1-10 and 15-19 of the '666 patent. The case was tried to the district court without a jury in

October 2004. It is undisputed that Torvian did not put in evidence on the issue of inequitable conduct during trial.

At the conclusion of trial, the district court, in an excellent and thorough opinion, held that Torvian did not infringe the '666 patent, either literally or under the doctrine of equivalents. The court first held that 35 U.S.C. § 112 ¶ 6 applied to claim 1 so that "clamping means" was limited to "a spring element working with a pivotally mounted clamping member with a strategically placed center of gravity." Id. at 318-19. Second, relying on the specification, the court construed "spring" in claim 15 as referring to an "extension or torsion spring." Id. at 319. The court then determined that the Allis device did not literally infringe the asserted claims because it did not use a pivotally mounted clamping member or rely on a strategically placed center of gravity. Id. The court also found that the Allis device did not infringe the asserted claims under the doctrine of equivalents because it did not meet four limitations of the '666 patent: a pivotally-mounted clamping member, rotational movement of the clamping device, a clamping member in which the location of the center of gravity was significant, and a spring attached to the cam and the other to a side wall. Id. at 320. The court observed that the Allis device used a slideably-mounted clamping member, a linear sliding motion, a clamping force that was not influenced by the center of gravity, and an unattached compression spring. Id.

As to invalidity, the court held that claims 1-10 and 15-19 were not anticipated or rendered obvious by prior art. Id. at 322-23. The court found that none of the prior art references disclosed "a spring for urging a clamping member in the direction of a pressing wall or a pivotally mounted clamping member urged by a torsion spring and

working together with centrifugal force to hold a straight length of spring in place." Id. at 322. The court also concluded that it would not have been obvious to one of ordinary skill in the art to modify one or more of the prior art references to use "a spring biased, cam shaped, pivotally mounted clamping member to hold a fixed length of string in place in a trimmer head rotating at 10,000 rpm." Id. at 323. The court pointed out that "though some of the prior art references had existed for many years, there still was a long-felt need for a convenient and easy-to-load trimmer head as late as the 1990s." Id.

On February 24, 2005, the court entered a judgment dismissing Kwik's claims for patent infringement and dismissing Torvian's "counterclaim for invalidity." Judgment, slip op. at 1. Kwik filed a Notice of Appeal on March 18, 2005, and Torvian filed a Notice of Appeal on March 25, 2005. We determined that the district court had not adjudicated Torvian's unenforceability counterclaim, which rendered the district court's judgment nonfinal for purposes of an appeal. However, we restated the principle that "a premature notice of appeal ripens upon subsequent action of the district court." Kwik Prod., Inc. v. Nat'l Express, Inc., No. 05-1319, -1343, slip op. at 4 (Fed. Cir. March 13, 2006) (quoting Pause Tech. LLC v. TiVo Inc., 401 F.3d 1290, 1295 (Fed. Cir. 2005)). Hence, we permitted the parties to seek remedial action in the district court and move this court to reinstate the appeal from a final judgment.

Kwik returned to the district court requesting dismissal of Torvian's unenforceability counterclaim. The court agreed to dismiss the counterclaim, and Kwik filed an amended notice of appeal to reinstate its appeal of the court's judgment of noninfringement. However, Torvian did not file an amended notice of appeal to reinstate its cross-appeal of the court's judgment of no invalidity. Therefore, we

reinstated Kwik's appeal as to noninfringement, but not Torvian's cross-appeal as to invalidity.

We now turn to the merits of Kwik's appeal from the judgment of noninfringement, as that judgment is final, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

Claim construction is an issue of law, Markman v. Westview Instruments, Inc., 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), that we review de novo, Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). The district court's determination of infringement, in contrast, is a question of fact that we review for clear error. Centricut, LLC v. Esab Group, Inc., 390 F.3d 1361, 1367 (Fed. Cir. 2004). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

On appeal, Kwik argues that the district court erred in holding that § 112, ¶ 6 applied to the term "clamping means" in claim 1 of the '666 patent. According to Kwik, because a clamp identifies a device that has a reasonably well understood meaning in the art, "clamping means" is not a means-plus-function limitation. Kwik contends that under the proper construction of "clamping means," there is no limitation that it comprise a pivotally mounted clamping member having a particularly located center of gravity, as supported by the doctrine of claim differentiation. Kwik also argues that the court erred in construing the term "spring" in claim 15 of the patent to be limited to extension and torsion springs. Kwik asserts that the ordinary and customary meaning of the term

"spring" is not limited to the specific types of springs disclosed in the specification, and thus includes compression springs. Based on its construction of "clamping means" and "spring," Kwik contends that claim 1 is literally infringed and claim 15 is infringed under the doctrine of equivalents. Kwik points out that the slideably mounted clamping member of the accused device is equivalent to the pivotally mounted clamping member recited in claim 15 of the patent because it performs the same function (to clamp the string), in the same way (by being urged toward the opposed way under a spring force), to achieve the same result (fixing the string in the trimmer head).

Torvian responds that the district court correctly applied § 112, ¶ 6 to the term "clamping means" because the claim is written in classic means-plus-function format, and Kwik failed to rebut the presumption that § 112, ¶ 6 applies. According to Torvian, the court correctly limited "clamping means" to the structures identified in the specification: a pivotally-mounted clamping member, either biased by a torsion or extension spring against an opposing wall or completely unbiased (in which event the force is applied manually), and a strategically-placed center of gravity, which increases the clamping force while the trimmer head is spinning. Torvian also contends that the court correctly relied on the specification to construe the term "spring" as a torsion or extension spring, but not a compression spring because the patent's reference to a "generic" spring is ambiguous. Finally, Torvian argues that the accused device does not infringe claims 1 and 15 of the patent, either literally or under the doctrine of equivalents, because it contains a slideably-mounted clamping member, biased by a compression spring, whose clamping force is not influenced by the location of its center of gravity. Torvian points out that the accused device not only contains different

structures from those disclosed in the '666 patent, but also functions in a different way, such that the force applied to hold the cutting string in place is applied rectilinearly rather than through circular or rotational application of force.

We agree with Torvian that the district court correctly construed the term "clamping means" in claim 1 as a means-plus-function limitation. A claim using the means-plus-function format will cover only the corresponding structure disclosed in the written description, as well as that structure's equivalents. 35 U.S.C. § 112, ¶ 6; Personalized Media Commc'n, LLC v. Int'l Trade Comm'n, 161 F.3d 696, 703 (Fed. Cir. 1998). A claim limitation that actually uses the word "means" will invoke a rebuttable presumption that § 112, ¶ 6 applies. Id. at 703-04. In this case, claim 1 phrases the "clamping means" limitation in means-plus-function language, thereby triggering the presumption. Because Kwik has not rebutted that presumption, the claim must "be construed to cover corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6.

Here, the specification of the '666 patent discloses a "clamping member [that] is pivotally mounted adjacent each aperture, opposite the corresponding pressing wall so that its center of gravity is disposed between the pivotal mounting and the corresponding pressing wall." '666 patent, col. 3, ll. 4-7. Further, as the district court correctly observed, the specification refers to "two degrees of clamping force," one that is generated by springs that hold the string in place when the cutting head is not in use and a second that is generated when the cutting head rotates and creates a centrifugal force "that acts on the centers of gravity of the clamping members and enhances the gripping force thereof." Id., col. 3, ll. 7-17. Therefore, the court did not err in construing

the means-plus-function limitation "clamping means" to mean "a spring element working with a pivotally mounted clamping member with a strategically placed center of gravity." Opinion, 356 F. Supp. 2d at 318.

We reject Kwik's argument that the well understood meaning of "clamp" rebutted the presumption that § 112, ¶ 6 applies to the limitation "clamping means." Even assuming that the term "clamp" had a reasonably well understood meaning in the art, a clamp is not the same as a clamping means. Equally unpersuasive is Kwik's argument that claim differentiation requires a different interpretation of "clamping means." As we stated in Laitram Corp. v. Rexnord, Inc., 939 F.2d 1533 (Fed. Cir. 1991), "[a] means plus function [element] is not made open-ended by the presence of another claim specifically claiming the disclosed structure which underlies the means clause or an equivalent of that structure." Id. at 1538. We further stated that "one cannot escape [the] mandate [of § 112, ¶ 6] by merely adding a claim or claims specifically reciting such structure or structures." Id. Because we conclude that § 112, ¶ 6 applies to the limitation "clamping means" in claim 1, we do not address Kwik's remaining arguments as to the construction of that term.

Having affirmed the district court's claim construction of the term "clamping means," we also affirm its judgment of no literal infringement of claim 1. Kwik's argument that there was literal infringement of claim 1 depends entirely upon a finding that the term "clamping means" is not a means-plus-function limitation. Because § 112, ¶ 6 does apply to that term, the court made no clear error in determining that the accused device did not literally infringe claim 1 of the '666 patent.

We also affirm the district court's judgment of no infringement of claim 15 under the doctrine of equivalents. As an initial matter, we note that we do not reach the issue of the correct interpretation of the term "spring" in claim 15 because the district court's determination of noninfringement under the doctrine of equivalents does not rely solely upon its construction of that term. Even under Kwik's proposed construction of "spring" as including compression springs, the court made no clear error in finding that the accused device did not perform substantially the same function in substantially the same way to achieve substantially the same result as the invention claimed in claim 15 of the '666 patent.

Specifically, the court identified four ways in which the accused device functions differently from the invention claimed in claim 15: the patent requires a pivotally-mounted clamping member, whereas the accused device uses a slideably mounted clamping member; the patent requires a rotational movement of the clamping member, whereas the accused device uses a linear, sliding motion; the location of the center of gravity of the clamping member is significant in the patented invention, whereas the center of gravity does not influence the clamping force in the accused device; and the patent describes two types of springs – a torsion and extension spring – that are attached at one end to the cam and at the other end to a side wall, whereas the accused device uses a compression spring that is not attached to any structure. Opinion, 356 F. Supp. 2d at 320. The first three findings are not clearly erroneous, and irrespective of the construction of the word "spring," each of those findings provides an independent basis for affirming the court's finding that the accused device did not infringe claim 15 under the doctrine of equivalents.

## CONCLUSION

We affirm the district court's construction of the limitation "clamping means," and its finding of noninfringement in favor of Torvian.